Daniel S. Robinson (SBN 244245)
Michael W. Olson (SBN 312857)
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, CA 9660
(949) 720-1288; Fax: (949) 720-1292
drobinson@robinsonfirm.com
molson@robinsonfirm.com

Stephen G. Larson (SBN 145225)
Catherine S. Owens (SBN 307626)
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, CA 90071
(213) 436-4864; Fax: (213) 623-2000
slarson@larsonllp.com

Ted B. Wacker (SBN 157416)
**LAW OFFICES OF TED B. WACKER**
1000 Newport Center Drive
Newport Beach, CA 92660
(949) 706-7100; Fax: (949) 209-2558
twacker@tbwlawfirm.com

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEVILLE ABRAHAM, III and PARRY ABRAHAM, Individually and on Behalf of All Others Similarly Situated, | ) Case No.: |
| Plaintiffs(s), | ) |
| vs. | ) |
| UNITED SERVICES AUTOMOBILE ASSOCIATION, USAA CASUALTY INSURANCE COMPANY, USAA GENERAL INDEMNITY COMPANY, GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY, AND CCC INTELLIGENT SOLUTIONS, INC., | ) **CLASS ACTION COMPLAINT FOR:** ) ) (1) BREACH OF CONTRACT, INCLUDING BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; ) (2) VIOLATION OF THE BUSINESS AND PROFESSION CODE § 17200; ) (3) FRAUD BY DECEIT; ) (4) VIOLATION OF INSURANCE CODE § 781; ) (5) CIVIL CONSPIRACY TO COMMIT FRAUD BY DECEIT; ) (6) CIVIL CONSPIRACY TO VIOLATE THE UCL; and ) (7) CIVIL CONSPIRACY TO VIOLATE INSURANCE CODE § 781 ) (8) DECLARATORY RELIEF |
| Defendants. | ) **JURY DEMAND** |

- 1 -

Plaintiffs Neville Abraham, III and Parry Abraham (collectively, "Plaintiffs"), on behalf of themselves individually and on behalf of all others similarly situated, bring this action against Defendants United Services Automobile Association ("USAA-Association"), USAA Casualty Insurance Company ("USAA-CIC"), USAA General Indemnity Company ("USAA-GIC"), Garrison Property and Casualty Insurance Company ("Garrison") (collectively, "USAA"), and CCC Intelligent Solutions Inc., d/b/a Auto Injury Solutions ("AIS") (USAA and AIS are hereinafter referred to as "Defendants") to recover monetary damages, injunctive relief, declaratory relief, and other remedies for breach of contract, fraud by deceit, violations of California Insurance Code § 781, violations of the California Business Practices Act, conspiracy to commit fraud by deceit, conspiracy to violate California Insurance Code § 781, and conspiracy to violate the California Business Practices Act. The following allegations are based upon Plaintiffs' personal knowledge with respect to their own acts and based upon information and belief as to all other matters.

## I.    INTRODUCTION

1.    This action concerns Defendants' improper conspiracy and scheme designed to systematically, wrongfully, and arbitrarily deny USAA's insureds' first-party medical payments ("MedPay") insurance benefits owed to them under their USAA insurance policies.[1]

2.    Instead of fulfilling its duty to conduct an investigation into each bill for medical expenses submitted by its California insureds, USAA engages in a multifaceted scheme whereby USAA improperly delegates its insurance claims adjustment duties to AIS, who arbitrarily and improperly reduces or denies MedPay claims using its automated Medical Bill Audit ("MBA") process.

3.    The MBA process is designed, largely through automated computer processes, to categorically eliminate, abate, and/or reduce the amount USAA pays for its insured's health care expenses based upon various codes, including PPO codes, DOC codes, PR codes, and RF codes.

4.    Specifically, in furtherance of its scheme, Defendants, through AIS's MBA process, reduce the amounts USAA will pay in connection with its insureds' medical bills using PPO codes

---

[1] MedPay is a first-party benefit coverage for which the insured has paid a separate premium.

CLASS ACTION COMPLAINT

1   which utilize allowable billing rates under agreements between other insurers and preferred provider

2   organizations ("PPO") and preferred provider networks ("PPN"),[2] even though USAA has no direct

3   PPO or PPN agreements with its insureds' healthcare providers.

4       5.     Also, in furtherance of their scheme, Defendants deny reimbursement of MedPay

5   and/or MedPay claims based on DOC codes whereby USAA directs AIS to program its computer to

6   deny payment of medical bills covered under MedPay and/or MedPay claims if certain documents

7   are not attached to the bills, even though the documentation is not needed to substantiate the necessity

8   of the billed treatments.

9       6.     Additionally, in furtherance of their scheme, Defendants deny reimbursement of

10  MedPay claims amounts, using PR codes, on the basis that the medical expenses are not medically

11  reasonable or necessary and/or causally connected to the accident, relying on sham medical review

12  services provided by physicians engaged by AIS pursuant to the MBA process. These sham medical

13  review services are conducted after bogus preset "flags" are triggered pursuant to guidelines

14  programmed into the MBA process including, for example, a gap in treatment by an arbitrarily set

15  number of days, or treatment exceeding an arbitrarily set number, *e.g*., the 13th chiropractic visit. In

16  denying payment, USAA relies on a letter written by the AIS engaged physician in connection with

17  the sham medical review. The physician conducts only a cursory, hollow review of the provider notes

18  and related documents contained in the AIS database and does not communicate with either the

19  insured or the insured's provider. USAA does not conduct any independent investigation, but instead

20  relies only on the sham physician review in denying reimbursement of the insured's MedPay claim.

21      7.     Moreover, in furtherance of their scheme to deny or reduce the payment of MedPay

22  benefits, Defendants rely on AIS's automated review process using preset "flags" or "codes" that

23  deny a MedPay claim on the basis that the provider treatment is not causally related to the accident if

24  the provider does not check the box "Auto Accident" on the standard "Health Insurance Claim Form"

25  under the inquiry: "IS PATIENT'S CONDITION RELATED TO:" The USAA adjuster does not

26  conduct any adjustment of the claim and does not investigate whether the treatment was causally

27

---

[2] Unless otherwise specified, PPO and PPN are collectively referred to herein as "PPO."

CLASS ACTION COMPLAINT

1  related to the accident, but instead denies reimbursement of the MedPay claim based only on the

2  MBA automated process.

3         8.    Additionally, in furtherance of their scheme to deny or reduce the payment of MedPay

4  benefits, Defendants reduce payment for medical provider bills, using RF codes, whenever an

5  automated review process, conducted by AIS pursuant to its contract with USAA, indicates that the

6  charge for a particular procedure exceeds a certain arbitrary threshold established in a database

7  maintained by the actuarial firm Milliman, Inc. (the "Milliman Database").  The Milliman Database

8  is comprised of an outdated 5% nationwide sample of charge data from patients over 65 collected by

9  the U.S. Department of Health and Human Services/Centers for Medicare and Medicaid Services

10  ("Medicare"). This Medicare patient sample has no bearing on the reasonableness of charges for the

11  medical services provided to USAA's insureds, does not reflect the entire range of fees charged in

12  the geographic area where the medical services are provided, and is comprised of data not organized

13  by a provider's years of experience, background, or qualifications. USAA denies or reduces payment

14  of its insureds' medical bills based only on AIS's automated review process and does not conduct any

15  independent or individualized review to assess whether the charge is a reasonable and necessary

16  medical expense.

17         9.    This action seeks to remedy Defendants' improper and unlawful conduct and

18  conspiracy and to enjoin Defendants from continuing to perpetrate their scheme against their

19  California insureds through the improper processing, adjustment, and payment of MedPay benefits.

20      **II.**   **PARTIES**

21        10.   Plaintiff Neville Abraham, III is a resident of Riverside, California, in Riverside

22  County, who was injured in an automobile accident on February 18, 2022, in Riverside County,

23  California. At the time of this accident, Plaintiff Neville Abraham, III was insured under a USAA-

24  CIC policy that included MedPay coverage.

25        11.   Plaintiff Parry Abraham is a resident of Riverside, California, in Riverside County,

26  who was injured in an automobile accident on February 18, 2022, in Riverside County, California. At

27  the time of this accident, Plaintiff Parry Abraham was insured under a USAA-CIC policy that

1  included MedPay coverage.

2      12.    At all times material hereto, Defendant USAA-Association was, and still is, a

3  reciprocal interinsurance exchange licensed to do business in the State of California. USAA-

4  Association has sold and/or underwritten thousands of automobile insurance policies to California

5  residents that provided MedPay coverage requiring the payment of all reasonable and necessary

6  medical expenses incurred by a covered person arising from a covered accident. MedPay policies at

7  issue in this case were issued by USAA-Association to California residents.

8      13.    At all times material hereto, Defendant USAA-CIC was, and still is, a corporation

9  organized under the laws of Texas with a principal place of business in Texas. USAA-CIC has sold

10  and/or underwritten thousands of automobile insurance policies to California residents that provided

11  MedPay coverage requiring the payment of all reasonable and necessary medical expenses incurred

12  by a covered person arising from a covered accident. USAA-CIC is a wholly-owned subsidiary of

13  USAA-Association. MedPay policies at issue in this case, including Plaintiffs' policies, were issued

14  by USAA-CIC to California residents.

15      14.    At all times material hereto, Defendant USAA-GIC was and is a corporation organized

16  under the laws of Texas with a principal place of business in Texas. USAA-GIC has sold and/or

17  underwritten automobile insurance policies in California, and throughout the United States, that

18  provided MedPay coverage requiring the payment of all reasonable and necessary medical expenses

19  incurred by a covered person arising from a covered accident. USAA-GIC is a wholly-owned

20  subsidiary of USAA. MedPay policies at issue in this case were issued by USAA-GIC to California

21  residents.

22      15.    At all times material hereto, Defendant Garrison was and is a corporation organized

23  under the laws of Texas with a principal place of business in Texas. Garrison has sold and/or

24  underwritten automobile insurance policies in California, and throughout the United States, that

25  provided MedPay coverage requiring the payment of all reasonable and necessary medical expenses

26  incurred by a covered person arising from a covered accident. Garrison is a wholly-owned subsidiary

27  of USAA. MedPay policies at issue in this case were issued by Garrison to California residents.

CLASS ACTION COMPLAINT

16.     At all times material hereto, Defendant CCC Intelligent Solutions, Inc. was and is a Delaware corporation with a principal place of business in Illinois. CCC Intelligent Solutions, Inc. is doing business as Auto Injury Solutions.

17.     USAA-Association, USAA-GIC, USAA-CIC and Garrison hold themselves out and identify themselves in California as USAA.  USAA-Association, the parent company, exercises total domination over, and directs and unduly controls, USAA-CIC, USAA-GIC, and Garrison; and exercises total domination over, and directs and unduly controls, all actions of USAA-CIC, USAA-GIC, and Garrison, including all actions relating to the improper processing, adjustment, and payment of MedPay benefits.

18.     USAA commingle funds, file joint tax returns, share principal office addresses, and share registered agents and officers.[3]

19.     USAA-Association negotiated and entered the contract with AIS on behalf of itself, as well as USAA-CIC, USAA-GIC, and Garrison.[4]

20.     USAA-Association has totally dominated and unduly controlled USAA-CIC, USAA-GIC, and Garrison to such an extent that USAA-CIC's, USAA-GIC's, and Garrison's independent existences were in fact non-existent and USAA-Association was in fact the alter ego of USAA-CIC, USAA-GIC, and Garrison and USAA-CIC, USAA-GIC, and Garrison are instrumentalities of USAA-Association.

21.     The corporate forms of USAA-Association, USAA-CIC, USAA-GIC, and Garrison were used for an improper purpose to allow USAA to engage in an improper scheme designed to systematically, wrongfully, and arbitrarily deny Plaintiffs' first-party MedPay insurance benefits

---

[3] *See* USAA-Association, USAA-CIC, USAA-GIC, and Garrison filings, showing that USAA file joint tax returns and share principal office addresses, and showing that USAA-CIC, USAA-GIC, and Garrison have the same officers and directors or trustees.

[4] Declaration of Joley Day-Mayfield in Support of Defendants' Opposition to Plaintiff's Motion to Remand, filed in *Peoples v. United States Automobile Association, et al*., United States District Court Western District of Washington, No. 2:18-cv-01173-RSL (ECF 15), pg. 3, ¶ 8 (Joley Day-Mayfield, USAA-Association's Director Claims Policy, states under oath that AIS is USAA-Association's "third-party vendor," carefully referring to USAA-Association as the party with vendor relationship with AIS, rather than "Defendants," where "Defendants" is collectively referring to USAA-Association and USAA-CIC).

1    owed under their USAA insurance policies. USAA was able to engage in this improper scheme

2    through the contract and unlawful arrangement between USAA-Association and AIS through which

3    USAA improperly denied or reduced MedPay claims.

4       22.    The improper use of the USAA corporate forms caused injury to Plaintiffs and all class

5    members allowing Defendants to systematically, wrongfully, and arbitrarily deny them first-party

6    MedPay insurance benefits owed under their USAA insurance policies.

7    **III.    JURISDICTION**

8       23.    This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C.

9    § 1332(d)(2). This is a class action in which there is diversity of citizenship between at least one

10   plaintiff class member and one defendant; the proposed Classes each exceed one hundred members;

11   and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

12      24.    During the time period at issue, USAA and AIS transacted, and continue to transact,

13   substantial business within Riverside county.

14      25.    The Court has personal jurisdiction over AIS because this suit arises out of and relates

15   to AIS's contacts with the forum. AIS's suit-related conduct created a substantial connection with the

16   state of California. AIS is essentially adjusting Plaintiffs' and the California putative class members'

17   MedPay claims. AIS directly communicates with Plaintiffs and the putative class members. AIS

18   requires its California insureds to send their medical information and documents to AIS. AIS reduces

19   and denies reimbursement of their MedPay claims using its computerized MBA system and the

20   associated flags and codes. Arbitrarily set flags are triggered in AIS's MBA system, *e.g.*, a flag

21   triggered after the 13th chiropractic visit, resulting in sham physician reviews conducted by

22   physicians engaged by AIS who recommend that reimbursement be denied. These AIS engaged

23   physicians make these bogus recommendations without ever examining the insured and without

24   communicating with the insured. USAA adjusters simply follow these bogus recommendations

25   without adjusting these claims.

26      26.    AIS sends Explanation of Reimbursement ("EOR") to USAA's California insureds

27   identifying these reductions and denials of their MedPay claims and the codes associated with these

unlawful reductions and denials. AIS further explains to USAA's insureds that if they desire to appeal the decisions set forth in the EORs sent by AIS to the insureds, they must appeal the decision to AIS. USAA's adjusters conduct no real or legitimate adjusting of these MedPay claims.

27.     AIS has purposely directed its activities at the state of California by committing the foregoing intentional acts which were expressly aimed at State of California and which caused harm in California—harm which AIS knew would be suffered in the state of California. There is a causal connection between AIS's contacts with the state of California and Plaintiffs' claims. AIS cannot show that the exercise of jurisdiction would be unreasonable.

28.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391. Defendants regularly conduct business in this District and a substantial part of the events giving rise to the claims asserted herein occurred in this District.

## IV.     FACTUAL ALLEGATIONS

### A.  USAA's Contractual Provisions Pertaining to MedPay Services, and the California Regulatory Requirements Pertaining to the Provision of Such Services.

29.     USAA specifically targets and markets to military service members and their families for the purpose of selling insurance products. USAA represents that it is committed to taking care of and supporting military service members and their families, touting that "[w]hen you join USAA, you become part of a family who stands by you during every stage of your life."

30.     USAA offered and sold MedPay coverage to California consumers, including Plaintiffs.

31.     Pursuant to its insurance policies with Plaintiffs and the putative class members, USAA must pay all reasonable and necessary medical expenses incurred by a covered person arising from a covered accident.

32.     The California insurance statutes and regulations promulgated under California Insurance Code § 790.03(h), and Title 10, Chapter 5, Subchapter 7.5, are implied terms incorporated by law into, and are a part of, Plaintiffs' and the putative class members' respective insurance policies providing for MedPay.

33.    Under the California Insurance Code, § 790.03(h), the following are classified as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance when they are knowingly committed or performed with such frequency as to indicate a general practice:

a.    "Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies."

b.    "Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear."

c.    "Attempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application."

d.    "Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement."

34.    Under insurance regulations, Cal. Code Regs. tit. 10, § 2695.7 (b)(1), when "an insurer denies or rejects a first party claim, in whole or in part, it shall do so in writing and shall provide to the claimant a statement listing all bases for such rejection or denial and the factual and legal bases for each reason given for such rejection or denial which is then within the insurer's knowledge."

35.    Under insurance regulations, Cal. Code Regs. tit. 10, § 2695.7 (d), insurers must "diligently pursue a thorough, fair and objective investigation and shall not persist in seeking information not reasonably required for or material to the resolution of a claim dispute."

36.    Under insurance regulations, Cal. Code Regs. tit. 10, § 2695.7 (e), "[n]o insurer shall delay or deny settlement of a first party claim on the basis that responsibility for payment should be assumed by others, except as may otherwise be provided by policy provisions, statutes or regulations, including those pertaining to coordination of benefits."

37.    Under insurance regulations, Cal. Code Regs. tit. 10, § 2695.7 (g), no insurer is allowed to "attempt to settle a claim by making a settlement offer that is unreasonably low."

38. Pursuant to its insurance policies, USAA was required to pay its California covered MedPay benefits as follows:

a. "[t]he amount provided by an applicable agreement with a Preferred Provider Organization, Preferred Provider Network, or other similar agreement"; or

b. "[t]he amount required, approved, or allowed by a fee schedule established by a state, federal, or other governmental entity in the relevant geographic area"; or

c. "[t]he amount negotiated with the provider"; or

d. "[t]he lesser of the following:

1. The actual amount billed; or

2. A reasonable fee for the service provided."

39. USAA does not have an agreement with a PPO, PPN or similar organization, and there is no amount required, approved, or allowed by a fee schedule established by the State of California, the federal government, or other governmental entity in the relevant geographic area. Thus, under its agreements with its California insureds, USAA must pay the lesser of either the actual billed amount or a reasonable fee for the medical services provided.

40. USAA made a fraudulent or reckless representation of facts as true (*e.g.* that USAA would pay in accordance with its MedPay policies), when Defendants knew they had a fraudulent cost containment scheme in place, viz., the AIS MBA System, that was designed to enrich Defendants to the detriment of USAA insureds. Defendants intended to deceive Plaintiffs and the putative class, and also made such representations knowingly.

41. Moreover, USAA and AIS conspired to conceal from USAA insureds that they would rely on AIS's MBA process to arbitrarily and unlawfully reduce and deny USAA insureds' MedPay claims using sham codes. USAA and AIS conspired to conceal from USAA insureds that they would subject USAA insureds' MedPay claims to AIS's MBA process's algorithms intentionally designed to deny and reduce claim reimbursement. Moreover, USAA and AIS conspired to conceal from USAA insureds that they would use arbitrary benchmarks to determine what costs for medical care were "reasonable."

CLASS ACTION COMPLAINT

42.     From at least February 20, 2019, to the present, thousands of USAA California insureds submitted reasonable medical expense bills for payment under MedPay coverage contained in policies purchased from USAA, and they will continue to do so.

43.     Under the terms of USAA's MedPay coverage, USAA assumed the obligation to conduct an investigation into each bill for medical expenses submitted, to make coverage decisions based on readily available information, and to pay all reasonable and necessary medical expenses incurred for the treatment of injuries sustained in a covered occurrence.

44.     In sum, instead of conducting an investigation into each bill for medical expenses submitted, Defendants conspired to arbitrarily deny and reduce MedPay claims submitted by their California insureds by improperly delegating USAA insurance claims adjustment duties to AIS who, through its MBA process, arbitrarily and improperly reduces or denies MedPay claims.

**B.  USAA's Agreement in Furtherance of its Conspiracy with AIS to Reduce and Deny MedPay Claims Using AIS's MBA Process Without Adjuster Involvement.**

45.     In furtherance of the conspiracy and scheme to deny or reduce the payment of MedPay benefits, USAA-Association contracts with AIS to use AIS's MBA process to reduce or deny reimbursement of MedPay benefits.

46.     AIS is not an insurance company. Nevertheless, USAA uses AIS's MBA process and automated, third-party bill-reviewing services to eliminate the need for the USAA insurer's adjuster or claims representative to undertake any individual investigation and evaluation of USAA's insureds' MedPay claims. USAA's use of AIS ensures a uniform practice for denying or reducing these claims.

47.     Upon information and belief, AIS is incentivized to universally and arbitrarily reduce or deny medical payment reimbursements, using its automated computer system and bogus physician letters.

48.     USAA improperly delegates its obligation to evaluate and adjust claims to AIS, including determining whether medical expenses are medically reasonable or necessary and/or causally connected to the accident, and for determining whether provider fees are reasonable.

CLASS ACTION COMPLAINT

49.     When USAA insureds submit MedPay claims to USAA, Defendants instructs these insured and their healthcare providers to send the supporting medical records and bills, including any appeals, to AIS, not USAA.

50.     Upon receipt of claim information from a USAA insured, AIS conducts the MBA process. The MBA process is designed, largely through automated computer processes, to categorically eliminate, abate, and/or reduce the amount USAA pays for its insured's health care expenses based upon, among other things, coding errors, sham medical necessity reviews, and non-existent PPO contracts and confidential statistical information, rather than through reviewing the individual character of health care services required by an insured, their related expenses, or their treatment provider.

51.     After AIS's MBA process reduces or denies reimbursement for MedPay claims, AIS generates and sends to USAA's insureds an EOR explaining, *inter alia*, the charge for medical treatment by the provider by service date, the amount by which USAA denies or reduces the charge for medical treatment, the reimbursement amount, and the explanation for any reduction or denial.

52.     Defendants expressly and/or implicitly have agreed to keep secret, and not to disclose to USAA insureds, the exact manner in which the MBA process arbitrarily and unlawfully denies and reduces MedPay claims; thus even if a USAA insured knew that the MBA system was used to evaluate their MedPay claims, they could never verify the accuracy or the fairness of the evaluation.

53.     Defendants have conspired to withhold and conceal from USAA insureds the nature of AIS's MBA process and the means by which AIS processes and evaluates MedPay claims to systematically reduce and deny them.

54.     Defendants uniformly and consistently executed, applied, managed and enforced the MBA process.

**C. Using AIS's MBA Process, Defendants Improperly Reduce MedPay Payments Using PPO Codes, Based on Non-Existent Agreements with PPOs.**

55.     AIS programs its computer MBA System to automatically and arbitrarily deny,

CLASS ACTION COMPLAINT

through the use of "PPO" codes, full payment of providers' bills covered by MedPay, and to instead pay a lower rate based upon allowable billing rates under undisclosed PPOs between other insurers and PPOs. Defendants then reduce reimbursement to USAA insureds even though USAA has no direct PPO agreements with its insureds' healthcare providers or the PPOs.

56.    When a PPO code is listed as the reason for a reduction in reimbursement, USAA, through AIS, falsely explains in the EOR that the reduction is because "[t]his service provider participates in a PPO network and has agreed to accept as payment in full the reimbursement amount listed in this line for the service listed, and also has agreed not to seek any additional payment from the patient."

57.    In reality, USAA has no agreements with PPOs, and providers have not agreed with USAA that they will not seek additional payment from insureds.

58.    USAA applies these reduced MedPay reimbursements based on fictitious PPO agreements and without investigating the reasonableness of the charged amount.

59.    As a result of Defendants' improper reduction of MedPay reimbursements based on non-existent direct PPO agreements with PPOs, insureds, among other things, are balance-billed by their healthcare providers, become the subject of collection actions by the providers seeking payment of the amounts that USAA refuses to pay, and/or remain under the threat of such actions.

**D. Using AIS's MBA Process, Defendants Improperly Deny MedPay Payments Using DOC Codes, Based on Requests for Irrelevant Additional Documentation, and Without USAA Conducting Any Independent Review.**

60.    USAA directs AIS to program its computer to automatically review each bill by line item and to flag and deny payment of medical bills covered under MedPay if certain documents are not attached to the bills. Even if the provider submitted documents substantiating the need for treatment or its relationship to the auto accident, the computer denies payment of the bill if USAA's preset documentation requirement was not met.

61.    Instead of paying the claim, a "DOC" reason code is identified in the EOR sent by AIS to the USAA insured and a request is made to the USAA insured or provider to submit the additional unnecessary documentation.

62.     Such AIS automatic computer-generated denials are made without USAA adjusters conducting any investigation as to whether the documentation was needed to substantiate the necessity of the billed treatment.

63.     On information and belief, many DOC code denials and document request letters are sent to USAA insureds by AIS with no USAA adjuster involvement.

**E. Using AIS's MBA Process, Defendants Improperly Deny MedPay Payments Using PR Codes, on the Basis that the Medical Expenses Are Not Medically Reasonable or Necessary and/or Causally Related to the Accident, Relying on Sham Reviews by Physicians Engaged by AIS, and Without USAA Conducting an Independent Review.**

64.     Defendants deny reimbursement of MedPay claims amounts, using PR codes, on the basis that the medical expenses are not reasonably medically necessary and/or causally related to the accident, relying on sham medical review services provided by physicians engaged by AIS pursuant to the MBA process. These sham medical review services are conducted after bogus and arbitrary preset "flags" are triggered pursuant to guidelines programmed into the MBA process including, for example, a gap in treatment by an arbitrarily set number of days, or treatment exceeding an arbitrarily set number, *e.g.*, the 13th chiropractic visit.

65.     More specifically, the preset flags generate a bogus review by a nurse employed by AIS to purportedly determine whether medical expenses are medically reasonable or necessary and/or causally related to the accident. After the billing is routed to the physician engaged by AIS, the physician conducts a sham medical review to determine whether the medical expenses are medically reasonable or necessary and/or causally related to the accident and recommends that reimbursement be denied after only a cursory and hollow review of the insured's medical records. AIS then generates a bogus records review report created by the physician to substantiate its improper denials and reductions of payments for medically necessary treatment.

66.     AIS generates these sham records review reports without the AIS engaged physician conducting a physical examination of the insured, without communicating with the insured or treating provider, and without basis in fact obtained from a reasonable investigation. AIS then prepares an EOR which denies reimbursement based on the sham physician review and records review report.

CLASS ACTION COMPLAINT

67.     Defendants deny reimbursement of the provider's charge and the EOR is sent by AIS to USAA insureds based solely on the bogus records review report without USAA conducting any independent evaluation of the claims, and without any direct communication between AIS and USAA, and without any communication between USAA and the insured's provider.

68.     On information and belief, AIS pays its reviewers per records review report generated, which payment scheme improperly incentivizes the reviewers to generate records review reports hurriedly and without conducting a reasonable investigation into the medical necessity and reasonableness of the treatment provided to insureds.

69.     On information and belief, sham records review reports are frequently completed by physicians within minutes.

70.     On information and belief, manager approval is required for an adjuster to override an AIS assigned PR code, and USAA discourages adjusters to seek such approval such that it rarely, if ever, occurs.

71.     On information and belief, AIS is solely responsible for all appeal processes related to PR code denials. AIS requires USAA insureds or their healthcare providers to submit appeals directly to AIS. AIS processes these appeals without any adjuster involvement, and issues the new EOR setting forth its decision.

72.     On information and belief, USAA adjusters do not engage in any legitimate or real investigative activities or other adjusting functions concerning AIS PR code denials.

73.     AIS prepares and mails directly to USAA insureds the EORs containing PR codes and the records review reports prepared by physicians engaged by AIS. All paper correspondences with USAA insureds go directly through AIS. The EORs inform USAA insureds of the amount that will reimbursed under their MedPay policies. The provision of this information to insureds is typically in the purview of a licensed adjuster; thus, a reasonable person would assume that AIS is adjusting their MedPay claims. However, AIS is not a licensed adjuster. AIS is improperly engaging in the adjustment of USAA's insureds' MedPay claims without a license and improperly and arbitrarily reducing and denying these claims with USAA's approval and consent so as to financially benefit

1  USAA and AIS to the detriment of USAA's insureds.

2      74.    In short, USAA improperly delegates to AIS its obligations to conduct a reasonable

3  and fair investigation, evaluation, and adjustment of insureds' claims. USAA then denies

4  reimbursement of its insureds' MedPay claims using AIS's MBA process and bogus physician

5  review.

6      **F.  Using AIS's MBA Process, Defendants Improperly Deny MedPay Payments**

7      **Using GR Codes, on the Basis that the Medical Expenses are Not Causally Related to the Accident, and Without USAA Conducting Independent Review.**

8      75.    Defendants deny reimbursement of MedPay claims amounts, using GR codes, *viz.*,

9  GR84, and advising the insured that the "Box 10, question B of the CMS1500 form indicates the

10  medical treatment rendered is not related to an auto accident. Should this be an error, submit a

11  corrected bill and include medical records for verification for the dates of service billed. Otherwise,

12  services not related to an auto accident are not reimbursable."

13      76.    Before Defendants deny payment through AIS's MBA Process and GR code, USAA's

14  adjusters do not investigate whether the medical treatment rendered is related to an auto accident.

15  Instead, USAA simply rubber stamps the AIS determination and denies reimbursement.

16      **G.  Using AIS's MBA Process, Defendants Improperly Reduce MedPay Payments,**

17      **Using Reasonable Fee, or RF Codes, that Rely on Unsupported and Arbitrary Bill Thresholds, and Without USAA Conducting an Independent Review.**

18      77.    In furtherance of their scheme to deny or reduce the payment of MedPay benefits,

19  Defendants rely on AIS's automated review process to use preset "reasonable fee" or "RF" codes, as

20  directed by USAA. Specifically, Defendants refuse to pay medical provider bills whenever an

21  automated review process, conducted by AIS pursuant to the MSA, indicates that the charge for a

22  particular procedure exceeds a certain arbitrary threshold established in the "Milliman Database. If

23  the provider's fee for a specific Current Procedural Terminology ("CPT") code[5] is more than $9.99

24  above the Milliman 80th percentile amount for the same CPT procedure, the computer automatically

25  denies the payment and sets the reimbursement amount at the 80th percentile amount. The computer

26

27

_____

[5] CPT is a medical code that is used to report medical procedures and services to entities such as health insurance companies.

CLASS ACTION COMPLAINT

then creates an EOR form which AIS sends to the USAA insured identifying the reason for the reduced payments as an "RF," *viz.,* "Reasonable Fee," reason code, and advising the insured that "[t]he charge exceeded a reasonable amount for the service provided." USAA does not conduct any independent or individualized review to assess whether the charge is a reasonable and necessary medical expense.

78. The Milliman Database used by Defendants to arbitrarily and improperly reduce the payment of MedPay benefits is comprised of an outdated 5% nationwide sample of charge data from patients over 65 collected by Medicare, has no bearing on the reasonableness of charges for the medical services provided by USAA's insureds, does not reflect the entire range of fees charged in a geographic area where the medical services are provided, and is comprised of data not organized by a provider's years of experience, background, or qualifications and credentials, including board certification. Nor does the Milliman Database take into consideration the severity of the accident, the patient's age, or pre-existing conditions.

79. AIS accesses and applies the Milliman Database in adjusting USAA insured' MedPay claims, assigns RF codes on medical bills through the MBA Process, and thereby arbitrarily and improperly reduces USAA insureds' MedPay claims.

80. Before Defendants deny payment through AIS's MBA Process and RF codes, USAA's adjusters do not investigate the provider's charges or determine "the reasonable fee" for that provider's services. AIS's computer drafts the EOR relying exclusively on the 80th percentile of the Milliman Database. AIS does not communicate with the patient, insured or treating provider. And AIS makes these computer generated determinations and calculations without knowledge of the insured's health treatment plan in place. Instead, USAA simply rubber stamps the AIS calculation, and sends the provider a reduced check; and AIS sends the insured the deceptive EOR stating that the denial or reduction is based on an "RF Reason Code," and falsely asserting that the amount billed "exceeds a reasonable amount for the service provided."

81. When Defendants reduce payment based on an RF code they are making no determination that the amount billed is in fact "unreasonable." Instead, USAA's choice of the 80th

CLASS ACTION COMPLAINT

percentile of billed charges for each procedure in each Medicare defined geographic area is arbitrary.

82.    On information and belief, USAA adjusters do not override the RF codes assigned by AIS through its MBA system, and they have no basis to legitimately determine what the "reasonable amount" is for medical bills.

83.    As a result of Defendants' improper reduction of MedPay reimbursements based on RF codes, USAA insureds, among other things, are balance-billed by their healthcare providers, become the subject of collection actions by the providers seeking payment of the amounts that USAA refuses to pay, and/or remain under the threat of such actions.

84.    On information and belief, Defendants are aware that USAA insureds are balance billed as a result of RF and PPO codes, but continue to reduce bills using these codes. Moreover, USAA improperly considers balance billing a "disputed amount" even though the amount is not actually in dispute. and even though the unpaid amount becomes a debt owed by their insureds who could face collection action and harm to their credit for any unpaid amounts.

### H.    USAA Entered into a Stipulation and Consent Order with the State of Vermont Agreeing to, *Inter Alia*, Discontinue Its Use of Physician Review Letters.

85.    USAA's use of medical reviews by AIS engaged physicians to deny MedPay claims was one of the subjects of the market conduct examination ("MCE") conducted by the Insurance Division of the Vermont Department of Financial Regulation ("Department") resulting in the entry of a Stipulation and Consent Order on May 18, 2018, in *In The Matter Of: United Services Automobile Association (USAA) (NAIC #25941); UNITED SERVICES AUTOMOBILE ASSOCIATION, USAA CASUALTY INSURANCE COMPANY,  (NAIC #25968); USAA General Indemnity Company (NAIC #18600); Garrison Property and Casualty Insurance Company (NAIC #21253)*, Docket No. 17-010-I ("Vermont Consent Order").

86.    In the Vermont Consent Order, the Department found that USAA engaged in unfair and deceptive acts and practices by, *inter alia,* "accepting the initial payment recommendations made by its third-party vendor [AIS] with a lack of documentation describing adjusting activities by the adjuster," "potentially creating balance billing problems for the claimant by reducing the amount of

CLASS ACTION COMPLAINT

an auto medical bill by determining what constitutes a 'reasonable fee' and only paying that amount," "[a]ccepting the third-party vendor's [AIS] determination regarding medical necessity without questioning the claimant or the provider;" and "[d]enying coverage without conducting a reasonable investigation." Examples include: "a. Accepting the third-party vendor's determination regarding medical necessity without questioning the claimant or the provider; and b. Denying coverage without conducting a reasonable investigation." Vermont Consent Order at 2-3.

87.    In the Vermont Consent Order, USAA, among other things, agreed that it "no longer review claims for medical necessity and have discontinued the use of physician review letters." *Id.* at 5-6.

88.    Additionally, USAA agreed to "adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies," including "guidelines and training material which emphasize the requirement to conduct a reasonable investigation prior to making a determination." *Id.*, ¶ 22.

89.    USAA acknowledged "that [the Vermont Consent Order] constitutes a finding by the Commissioner that [USAA has] violated the provisions of Vermont law set forth above and agree not to contest such findings." *Id.*, ¶ 18.

**I.    After the Vermont Consent Order, USAA Improperly Continues to Use AIS to Adjust USAA Claims Nationwide, Including in California.**

90.    On information and belief, AIS, pursuant to its contract with USAA-Association, uses its systems designed to systematically, wrongfully, and arbitrarily deny USAA's insureds' MedPay benefits owed under their USAA insurance policies nationwide, with the possible exception of Vermont (in view of the Vermont Consent Order).

91.    Although USAA, under the Vermont Consent Order, agreed to cease engaging in these practices in Vermont, it nevertheless continues to engage in these practices in other states, including California, unless ordered to cease engaging in such conduct.

92.    AIS's corporate designee has described AIS's "standard workflow diagram," which is the process employed by AIS nationwide on behalf of USAA when generating an EOR, as evidenced

in a reply brief published in Westlaw:

> Q. I really don't want to rehash this, but you were talking about how medical bills come in and they are processed and then you talked about indexing. You kept talking about all these steps about how a claim eventually results in an EOR, right?
>
> A. [Tina Senftle – AIS's corporate designee]. Yes.
>
> Q. What would you describe that process?
>
> A. **That's a workflow diagram.**
>
> Q. Workflow diagram. Is there a workflow diagram that shows how USAA's Medpay claims are processed by the AIS software?
>
> A. Specific to Montana?
>
> Q. Yes.
>
> A. No.
>
> Q. The next question is going to be, is there one that is more general to the United States as a whole?
>
> A. I mean, there is a diagram that shows the workflow, yes.
>
> Q. What is that document called, "workflow diagram"?
>
> A. I don't know that it has a name, but yeah.
>
> Q. The diagram that you reference, does the workflow diagram apply to claims processed in Montana?
>
> A. **It would be a standard workflow.**[6]

93.     USAA knows that its computer-based billing scheme is harming its insureds – mostly consisting of U.S. military veterans and their families – both financially and physically. Yet USAA will only cease engaging in its billing scheme until ordered to do so on a state-by-state basis as evidenced by USAA continuing to engage in its billing scheme even after it, and its affiliated companies, entered into the Vermont Consent Order:

94.     In its Rule 30(b)(6) deposition addressing, *inter alia*, the Vermont Consent Order and USAA's conduct thereafter in this matter, USAA testified generally that even though Montana's UTPA is essentially the same as Vermont's, it gave no consideration to changing its business practices in Montana in a similar fashion. Plaintiffs' expert, Dave Bauer, has opined "given my 20 years as in-

---

[6] Reply Brief in Support of Plaintiffs' Third Motion to Compel, *Byorth v. USAA Cas. Ins. Co.*, No. 20CV00076, 2019 WL 9851641, at *5-6 (D. Mont. Mar. 8, 2019) (emphasis in original).

house counsel for a major insurance company, I find it suspect that USAA upper management has not discussed the Vermont Order in detail and whether it should review its practices in Montana and all other states where it does business." [7]

**J.  USAA-CIC and AIS, through AIS's MBA Process, Unlawfully Denied or Reduced Reimbursement for Plaintiff Neville Abraham, III's MedPay Claims.**

95.    Plaintiff Neville Abraham, III was injured in an automobile accident on February 18, 2022, while insured by USAA. Specifically, Plaintiff Neville Abraham, III had MedPay coverage through USAA-CIC.

96.    Plaintiff Neville Abraham, III sought and received medical treatment for injuries he suffered in this accident. The medical treatment Plaintiff Neville Abraham, III received was causally related to his injuries and was reasonable and necessary.

97.    More specifically, Plaintiff Neville Abraham, III sought and received medical treatment for injuries he suffered in the February 18, 2022, automobile accident, and USAA-CIC either unlawfully reduced or denied reimbursement for this medical care.

98.    Plaintiff Neville Abraham, III received medical care, including, but not limited to, orthopedic care, physical therapy, and diagnostic testing in March and April 2022 in connection with his injuries sustained in the February 18, 2022, automobile accident.

99.    In its EORs AIS provided to Plaintiff Neville Abraham, III, USAA-CIC substantially reduced reimbursement of the charged amounts on several bases including: (1) PPO ("This service provider participates in a PPO network and has agreed to accept as payment in full the reimbursement amount listed in this line for the service listed, and also has agreed not to seek any additional payment from the patient If you are the service provider, and you do not agree that this service is subject to such an agreement, or you have any other question about this issue, please contact Customer Service."); and (2) DOC64 ("In order to make a reimbursement decision, the daily office records for the date of service are needed to support the Evaluation and Management level of service billed.").

---

[7] Brief in Opposition to USAA's Motion in Limine to Exclude Vermont Stipulation and Consent Order, *McKean v. USAA Cas. Ins. Co.*, No. 20-76-BLG-KLD, 2020 WL 4783602 (D. Mont. July 27, 2020).

1    Additional documentation was submitted and on April 24, 2023, USAA-CIC denied reimbursement
2    of the charge in another EOR on the basis of DUP for being duplicative; RF_5 ("The charge exceeds
3    a reasonable amount for the services provided. If you do not accept the recommended amount stated
4    in this EOR as payment in full for this line item, please submit further documentation or explanation
5    to support the reasonableness of the charge submitted by you for payment."); and RF-SMPR4 ("The
6    charge exceeds the reasonable amount for the service provided. An additional adjustment has been
7    made to the technical component of this procedure for multiple procedures performed on the same
8    date of service. If you do not accept the recommended amount as payment in full, please submit
9    further documentation to support the reasonableness of the charge.").

10
11    **K. USAA-CIC and AIS, through AIS's MBA Process, Unlawfully Denied or Reduced Reimbursement for Plaintiff Parry Abraham's MedPay Claims.**

12    100.    Plaintiff Parry Abraham was injured in an automobile accident on February 18, 2022,
13    while insured by USAA. Specifically, Plaintiff Parry Abraham had MedPay coverage through USAA-
14    CIC.

15    101.    Plaintiff Parry Abraham sought and received medical treatment for injuries she
16    suffered in this accident. The medical treatment Plaintiff Parry Abraham received was causally related
17    to her injuries and was reasonable and necessary.

18    102.    More specifically, Plaintiff Parry Abraham sought and received medical treatment for
19    injuries she suffered in the February 18, 2022, automobile accident, and USAA-CIC either unlawfully
20    reduced or denied reimbursement for this medical care.

21    103.    Plaintiff Parry Abraham received medical care including, but not limited to, orthopedic
22    care and physical therapy in March and April 2022 in connection with her injuries sustained in the
23    February 18, 2022, automobile accident.

24    104.    In its EORs AIS provided to Plaintiff Parry Abraham, USAA-CIC substantially
25    reduced reimbursement of the charged amounts on the basis of PPO ("This service provider
26    participates in a PPO network and has agreed to accept as payment in full the reimbursement amount
27    listed in this line for the service listed, and also has agreed not to seek any additional payment from

1  the patient If you are the service provider, and you do not agree that this service is subject to such an

2  agreement, or you have any other question about this issue, please contact Customer Service.").

3  ## V.   CLASS ALLEGATIONS

4  105.   Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

5  106.   The proposed class consists of:

6  All persons (1) who were insured under the MedPay coverage of a California automobile
   insurance policy issued by USAA; (2) who received medical, health care, or rehabilitation
7  services, or medication or equipment, from a health care provider; (3) who made a claim
   under the MedPay coverage of that policy; (4) who submitted (or whose health care
8  provider submitted) to USAA a bill for such services or products; and (5) who had that bill
   reduced or denied by a PPO code; or Physician Review (or PR code); or DOC code; or RF
9  code; or GR code (the "Class").

10  107.   Excluded from the Class are Defendants' officers, directors, affiliates, legal

11  representatives, employees, successors, subsidiaries, and assigns. Also excluded from the Class are

12  any judge, justice, or judicial officer presiding over this matter and the members of their immediate

13  families and judicial staff.

14  108.   The time period for the Class is the number of years immediately preceding the date

15  on which this Complaint was filed as allowed by the applicable statute of limitations, going forward

16  into the future until such time as Defendants remedy the conduct complained of herein.

17  109.   **Numerosity**: The Class is estimated to include thousands of USAA California

18  insureds. Specifically, during the class period, more than 1,000 California insureds submitted

19  reasonable and necessary medical expense bills for payment under a USAA MedPay policy and had

20  their payments improperly denied or reduced based on RF, PR, DOC, PPO and GR reason codes. The

21  putative Class consists of residents of multiple counties in California and is geographically diverse.

22  Thus, the size and geographical location of the Class renders individual joinder of all members

23  impracticable. While the exact numbers of the members of the Class are unknown to Plaintiffs at this

24  time, membership in the Class may be ascertained from the records maintained by Defendants.

25  110.   **Commonality**: The Class's claim arises from a common process and common

26  practices used by Defendants in adjusting and reducing or denying MedPay claims. The common

27  process includes the use of AIS's MBA process to perform an automated computerized bill review

that includes common practices in denying or reducing charges based on certain preset flags, codes, criteria, and limitations, bogus medical reviews, and no adjusting of MedPay claims by USAA adjusters. Among these common practices are denials and reductions that are based on certain reason codes that appear on the EOR(s) AIS sent to the insured and providers. The common questions of fact and law include:

a.    Whether USAA entered into agreements to provide MedPay coverage and therein gave itself discretion to pay its California insureds any amount it wanted.

b.    Whether Defendants conspired to commit fraud by deceit, and to violate California Insurance Code § 781 and/or the California Business Practices Act.

c.    Whether USAA improperly delegates its duty to conduct an independent evaluation and adjustment of claims to AIS, without USAA conducting any adjusting of MedPay claims.

d.    Whether Defendants arbitrarily reduce MedPay benefits through the improper use of PPO codes.

e.    Whether Defendants arbitrarily reduce MedPay benefits through the improper use of RF codes.

f.    Whether Defendants arbitrarily reduce MedPay benefits through the improper use of bogus physician reviews.

g.    Whether Defendants arbitrarily reduce MedPay benefits through the improper use of DOC codes.

h.    Whether Defendants arbitrarily reduce MedPay benefits through the improper use of GR codes.

i.    Whether Defendants' complained of practices violate USAA's insurance contracts with their California insureds.

j.    Whether Defendants' denials and reductions of MedPay claims are based on their use of AIS's MBA process which uses an arbitrary automated, computer-generated review.

k.    Whether USAA has a practice of relying solely on AIS to make denials and

CLASS ACTION COMPLAINT

reductions of MedPay claims without conducting their own independent investigation or individualized investigation based on all "available" information including, for example, the severity of the accident, the age and preexisting condition of the patient, the provider's background, years of experience, credentials or other individual attributes.

111. **Typicality**: The claims of the individual Plaintiffs arise from the same common practices and scheme used by Defendants to process the claims of the members of the Class. In each instance, USAA used AIS to perform an automated, computer-generated bill review that resulted in improper denials or reductions in payment of charges submitted pursuant to MedPay claims. The same criteria applied by AIS in processing the charges submitted by the Plaintiffs on their MedPay claims were applied to the charges submitted by all Class members. Plaintiffs' claims are based upon the same factual and legal theories as those of the Class. All Class members will benefit by the action brought by Plaintiffs by obtaining relief in the manner described below, including, but not limited to, damages and/or declaratory and injunctive relief.

112. **Predominance**: Common questions predominate because Defendants undertook a common course of conduct towards all members of the Class and applied their practices and scheme at issue to all bills submitted under USAA MedPay coverage during the class period.

113. **Superiority**: Class certification is proper where a class action is a superior method for adjudicating the claims of thousands of Class members located in California that raise identical factual and legal issues concerning Defendants' MedPay processing and payment practices scheme. Class certification is a superior method of adjudicating the claims alleged herein where it is desirable to concentrate the litigation and claims in a single forum to avoid duplicity of actions and inconsistent adjudications of identical claims.

114. Class certification is a superior method of adjudicating the claims alleged herein where the individual Class members have little interest in, or time to devote to, individually controlling the prosecution of their claims.

115. Class certification is a superior method of adjudicating the claims alleged herein where it is desirable to concentrate the litigation and claims in a single forum to avoid duplicity of actions

and inconsistent adjudications of identical claims. The cost to the court system of the various counties where Class members are located would be substantial if the claims were adjudicated individually.

116.    Class certification is a superior method of adjudicating the claims alleged herein because there are few difficulties likely to be encountered in the adjudication of the Class members' claims. Other, similar class actions based on the same factual and legal issues have been certified throughout the United States.

117.    **Adequacy of Representation**: Plaintiffs are USAA insureds who had payment of charges submitted on MedPay claims denied or reduced because of Defendants' improper practices described above. Plaintiffs have the same interest as members of the Class in ensuring that Defendants do not use improper processes and practices to deny or reduce MedPay claims. Plaintiffs have no conflicts with the interests of the Class. Plaintiffs have retained competent counsel with experience litigating consumer class actions, as well as breach of contract, and other insurance claims. Plaintiffs and their chosen counsel will fairly and adequately protect the interests of the Class.

## FIRST CLAIM FOR RELIEF
### Breach of Contract, Including Breach of the Covenant of Good Faith and Fair Dealing Against Defendant USAA-CIC
### (On Behalf of All Plaintiffs and the Class)

118.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

119.    Plaintiffs and other Class members entered into written insurance contracts with USAA that provided for MedPay benefits.

120.    Pursuant to the contracts, in exchange for insureds' premium payments, USAA implied and covenanted that it would act in good faith and follow the law and the contracts with respect to the prompt and fair payment of MedPay benefits to Plaintiffs and Class Members.

121.    USAA breached its insurance agreement with Plaintiffs and Class members by, among other things:

    a.    Improperly delegating its claims adjustment function to AIS which uses its MBA process to arbitrarily and improperly deny or reduce MedPay claims;

b. Improperly reducing MedPay claim payments based on an EOR stating that "[t]his service provider participates in a PPO network and has agreed to accept as payment in full the reimbursement amount listed in this line for the service listed, and also has agreed not to seek any additional payment from the patient," while at the same time, USAA had not entered into PPO or PPN agreements with providers;

c. Improperly reducing MedPay claim payments based on an EOR attaching a letter written by a physician (i) engaged by AIS; (ii) who is not licensed in the relevant state; (iii) who does not specialize in the area under review; (iv) who conducts only a paper review; (v) who does not physically examine the patient or speak with the patient; and (vi) who has never spoken with the insureds' provider regarding the reasonableness or necessity for the medical service, stating that the submitted documentation does not substantiate that the treatment provided is medically necessary and/or related to the loss, and without any independent investigation by USAA;

d. Improperly denying full payment of MedPay claims based on DOC codes whereby USAA directs AIS to program its computer to deny payment of medical bills covered under MedPay claims if certain documents are not attached to the bills, even though the documentation is not needed to substantiate the necessity of the billed treatments, and without USAA conducting any independent investigation, but instead relying only on AIS's arbitrary automated MBA process;

e. Improperly denying full payment of MedPay claims by improperly delegating its duty to evaluate and adjust MedPay claims to AIS which used an arbitrary automated review process. This includes using arbitrary and automated reason codes, including, *inter alia*, DOC and RF codes, without USAA conducting an independent investigation; and

f. Improperly denying full payment of MedPay claims based on GR codes whereby USAA directs AIS to program its computer to deny payment of medical bills covered under MedPay claims based on automatic bill processing through its computer based on relation to a motor vehicle collision, without USAA conducting any independent investigation, but instead

1    relying only on AIS's arbitrary automated MBA process.

2        122.    USAA's practices as described herein violated its duties to Plaintiffs and Class

3    members under the insurance contracts and California law.

4        123.    USAA's practices as described herein constitute an unreasonable denial to pay benefits

5    due to Plaintiffs and Class members in breach of the implied covenant of good faith and fair dealing

6    arising from USAA's insurance contracts.

7        124.    USAA's wrongful reduction of MedPay benefits damaged Plaintiffs and Class

8    members.

9                        **SECOND CLAIM FOR RELIEF**
                  **Violation of Business and Professions Code § 17200**
10                        **Against Defendant USAA-CIC**
                   **(On Behalf of All Plaintiffs and the Class)**
11

12        125.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every

13    allegation contained above as though the same were fully set forth herein.

14        126.    Plaintiffs bring this claim for violation of California Business and Profession Code §

15    17200 on behalf of themselves and the Class members.

16        127.    California Business and Professions Code § 17200 (the "Unfair Competition Law")

17    prohibits acts of "unfair competition" including any "unlawful, unfair or fraudulent business act or

18    practice."

19        128.    USAA-CIC's practice of denying medical charges based on causation and necessity

20    through sham physician reviews, and denying and reducing claims through AIS's arbitrary MBA

21    process without independent review is an unfair business practice proscribed by §17200. There is no

22    reasonable basis for these denials and reductions. USAA-CIC's practice and scheme is substantially

23    injurious to consumers and has allowed USAA-CIC to be unjustly enriched at the consumers'

24    expense.

25        129.    This substantial injury is not outweighed by any countervailing benefits to consumers

26    or competition.

27        130.    USAA-CIC violated the Unfair Competition Law by violating California Insurance

Code § 790.03(h).

131.    USAA-CIC violated the Unfair Competition Law by violating California Insurance Code § 781.

132.    USAA-CIC violated the Unfair Competition Law when it failed to implement reasonable standards for the prompt investigation and processing of claims arising under its MedPay policies for Plaintiffs and Class members.

133.    USAA-CIC violated the Unfair Competition Law when it did not attempt in good faith to effectuate prompt, fair and equitable settlements of claims for Plaintiffs and Class members.

134.    USAA-CIC violated the Unfair Competition Law when it attempted to settle claims for Plaintiffs and Class members for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application.

135.    USAA-CIC's actions violate the unlawful prong of § 17200 because they violate California's express statutory and regulatory requirements regarding insurance, including California Insurance Code § 790.03(h) and California Insurance Code § 781.

136.    USAA-CIC's  actions violate the unfair prong of § 17200 because the acts and practices set forth above, including USAA-CIC's use of automated computer processing to deny claims, delegation of adjustment duties to AIS, use of non-existing PPO agreements, delay of payment based on unnecessary documents, and automated denial based on medical necessity or causation, offend established public policy, and because the harm they cause to consumers greatly outweighs any benefits associated with those practices. USAA-CIC's actions also violate the unfair prong because they constitute a systematic breach of consumer contracts.

137.    USAA-CIC has violated the fraudulent business practices prong of § 17200 because the misrepresentations and omissions regarding the MedPay insurance policies and Plaintiffs' rights under the policy, including the denial of claims on sham pretenses, were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

138.    As a direct and proximate result of USAA-CIC's violation of § 17200, Plaintiffs and

CLASS ACTION COMPLAINT

1 Class members have been injured in fact and suffered lost money or property in that USAA-CIC

2 failed to provide benefits owed to their insureds under the insurance policies USAA-CIC issued.

3      139.    To date, USAA-CIC continues to violate the Unfair Competition law by breaching its

4 insurance contracts.

5      140.    To date, Plaintiffs and Class members are still insured by USAA-CIC.

6      141.    Plaintiffs and Class members are realistically threatened by USAA-CIC's future

7 repetition of the violations of the California Insurance Code § 790.03(h) and California Insurance

8 Code § 781.

9      142.    Pursuant to § 17203 of the Unfair Competition Law, Plaintiffs and Class members, are

10 seeking an order enjoining USAA-CIC from denying or reducing benefits owed to USAA-CIC

11 insureds through its scheme involving AIS's MBA process and sham medical reviews. Without such

12 an order, there is a continuing threat to Plaintiffs and the Class members, as well as to members of

13 the general public, that USAA-CIC will continue to deny and reduce benefits to California consumers.

14      143.    USAA-CIC's scheme is especially harmful to the general public because MedPay

15 coverage extends not only to the named insureds, but to others who drive vehicles insured by USAA-

16 CIC through permissive use.

17                 **THIRD CLAIM FOR RELIEF**
**Fraud by Deceit, Cal. Civ. Code §§ 1709 & 1710**
18                 **Against Defendant USAA-CIC**
**(On Behalf of All Plaintiffs and the Class)**
19

20      144.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every

21 allegation contained above as though the same were fully set forth herein.

22      145.    Under California law, fraudulent deceit includes "[t]he suggestion, as a fact, of that

23 which is not true, by one who does not believe it to be true." Cal. Civ. Code § 1710(1).

24      146.    Under California law, fraudulent deceit includes "[t]he suppression of a fact, by one

25 who is bound to disclose it, or who gives information of other facts which are likely to mislead for

26 want of communication of that fact." Cal. Civ. Code § 1710(3).

27      147.    Under California law, fraudulent deceit includes "[a] promise, made without any

1    intention of performing it." Cal. Civ. Code § 1710(4).

2        148.    USAA-CIC made a fraudulent or reckless representation of facts as true (*e.g.* that it

3    would pay in accordance with its MedPay policies), when it knew it had a fraudulent cost containment

4    scheme in place that was designed to enrich USAA-CIC and AIS to the detriment of its insureds.

5    USAA-CIC intended to deceive Plaintiffs and the putative class, and also made such representations

6    knowingly.

7        149.    Moreover, USAA-CIC concealed from its insureds that it would rely on AIS's MBA

8    process to arbitrarily and unlawfully reduce and deny their MedPay claims using sham codes. USAA-

9    CIC concealed from its insureds that it would subject its insureds MedPay claims to AIS's MBA

10   process's algorithms intentionally designed to deny and reduce claim reimbursement. Moreover,

11   USAA-CIC also concealed from its insureds that it would use arbitrary benchmarks to determine what

12   costs for medical care were "reasonable."

13       150.    USAA-CIC has committed fraudulent deceit under Cal. Civ. Code § 1710 because

14   USAA-CIC failed to disclose to its insureds under its MedPay policies that USAA-CIC had

15   implemented a multifaceted, improper, and unconscionable scheme to deny and reduce the payment

16   of MedPay benefits. In furtherance of its scheme to deny or reduce the payment of MedPay benefits,

17   USAA contracted with AIS, a third-party, to reduce or deny reimbursement of USAA-CIC's insureds'

18   MedPay benefits using its MBA process. The MBA process is designed to categorically eliminate or

19   reduce the amount USAA-CIC pays for its insureds' health care expenses based upon various codes,

20   including PPO codes, DOC codes, PR codes, GR codes and RF codes.

21       151.    USAA-CIC had a duty to disclose its multifaceted, improper, and unconscionable

22   scheme to deny and reduce the payment of MedPay benefits because USAA-CIC affirmatively

23   represented to its insureds in its MedPay policies that it would pay provider fees in accordance with

24   the MedPay policies.

25       152.    Specifically, in its MedPay policies, USAA-CIC represented that it would pay its

26   California insureds' covered MedPay benefits as follows:

27       a. "[t]he amount provided by an applicable agreement with a Preferred Provider

1    Organization, Preferred Provider Network, or other similar agreement";

2              b. "[t]he amount required, approved, or allowed by a fee schedule established by a
3    state, federal, or other governmental entity in the relevant geographic area";

4              c. "[t]he amount negotiated with the provider; or"

5              d. the lesser of "[t]he actual amount billed" or "[a] reasonable fee for the service
6    provided."

7         153.    USAA-CIC intentionally concealed and omitted material information regarding the
8    payments it would make under its insureds' MedPay policies. The foregoing multifaceted scheme,
9    which USAA-CIC failed to disclose to its insureds at the time they entered into the MedPay policies,
10   is directly contrary to USAA-CIC's representations in the MedPay policies regarding the payment of
11   provider fees in connection with USAA-CIC's insureds' MedPay claims.

12        154.    Had Plaintiffs and the putative class been aware of USAA-CIC's multifaceted scheme
13   to deny or reduce their MedPay benefits, they would not have paid premiums to USAA-CIC to obtain
14   the MedPay policies from USAA-CIC.

15        155.    Plaintiffs and the putative class suffered injury as a direct result of USAA-CIC's
16   deceit. Specifically, Plaintiffs and the putative class had their MedPay benefits improperly reduced
17   or denied by USAA-CIC's multifaceted scheme.

18
19                              **FOURTH CLAIM FOR RELIEF**
                             **Violation of Insurance Code § 781**
                                **Against Defendant USAA-CIC**
20                        **(On Behalf of All Plaintiffs and the Class)**

21        156.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every
22   allegation contained above as though the same were fully set forth herein.

23        157.    California Insurance Code § 781(a) prohibits any statement that is known, or should
24   have been known, to be a misrepresentation to any other person for the purpose of inducing, or tending
25   to induce, such other person to take out a policy of insurance or cause of person to forfeit an existing
26   policy of insurance.

27        158.    A violation of California Insurance Code § 781 gives rise to a private right of action

and is punishable by a fine not exceeding three times the amount of the loss suffered by the victim. *See Kentucky Central Life Ins. Co. v. LeDuc*, 814 F. Supp. 832, 835-37 (N.D. Cal. 1992) ("Supplying a private cause of action [for § 781] will further the policy prohibiting misrepresentation.").

159.    The California Insurance Code provides for "an administrative procedure allowing the Insurance Commissioner to suspend an agent's license or an insurer's certificate of authority for violation of § 781. *See* Ins. Code §§ 782, 783, 783.5

160.    USAA-CIC has violated California Insurance Code § 781(a) by failing to disclose to its insureds that USAA-CIC had implemented a multifaceted, improper, and unconscionable scheme to deny and reduce the payment of MedPay benefits. In furtherance of its scheme to deny or reduce the payment of MedPay benefits, USAA contracted with AIS, a third-party, to reduce or deny reimbursement of USAA-CIC's insureds' MedPay benefits using its MBA process. The MBA process is designed to categorically eliminate or reduce the amount USAA-CIC pays for its insureds' health care expenses based upon various codes, including PPO codes, DOC codes, PR codes, GR codes and RF codes.

161.    Specifically, in its MedPay policies, USAA-CIC represented that it would pay its California insureds' covered MedPay benefits as follows:

a. "[t]he amount provided by an applicable agreement with a Preferred Provider Organization, Preferred Provider Network, or other similar agreement";

b. "[t]he amount required, approved, or allowed by a fee schedule established by a state, federal, or other governmental entity in the relevant geographic area";

c. "[t]he amount negotiated with the provider; or"

d. the lesser of "[t]he actual amount billed" or "[a] reasonable fee for the service provided."

162.    Plaintiffs and the putative class were induced to purchase MedPay polices on the basis that MedPay benefits would be paid as represented in the MedPay policies.

163.    USAA-CIC misrepresented that it would reimburse MedPay claims under the MedPay policies, and intentionally concealed and omitted material information regarding the payments it

would make under its insureds' MedPay policies. The foregoing multifaceted scheme, which USAA-CIC failed to disclose to its insureds at the time they entered into the MedPay policies, is directly contrary to USAA-CIC's representations in the MedPay policies regarding the payment of provider fees in connection with USAA-CIC's insureds' MedPay claims.

164.    USAA-CIC had a duty to disclose its multifaceted, improper, and unconscionable scheme to deny and reduce the payment of MedPay benefits because USAA-CIC affirmatively represented to its insureds in its MedPay policies that it would pay provider fees in accordance with the MedPay policies.

165.    Had Plaintiffs and the putative class been aware of USAA-CIC's multifaceted scheme to deny or reduce their MedPay benefits, they would not have paid premiums to USAA-CIC to obtain the MedPay policies from USAA-CIC.

166.    USAA-CIC violated California Insurance Code § 781 because it knew or should have known that its statements regarding reimbursement in its MedPay policies were false in light of USAA-CIC's multifaceted, improper, and unconscionable scheme to deny and reduce the payment of MedPay benefits.

167.    Plaintiffs and the putative class suffered injury as a direct result of USAA-CIC's violation of California Insurance Code § 781. Specifically, Plaintiffs and the putative class had their MedPay benefits improperly reduced or denied by USAA-CIC's multifaceted scheme. Moreover, Plaintiffs and the putative class paid insurance premiums for MedPay policies that did not, as a result of USAA-CIC's multifaceted scheme, reimburse the claims as promised under the MedPay policies.

**FIFTH CLAIM FOR RELIEF**
**Civil Conspiracy to Commit Fraud by Deceit**
**Against All Defendants**
**(On Behalf of All Plaintiffs and the Class)**

168.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

169.    Defendants and AIS (who is not a subsidiary of USAA, and who is an independent third party) engaged in a conspiracy to commit fraud by deceit, in violation of Cal. Civ. Code §

1710(1), (3) and (4), as alleged in Count 4, *supra*, by implementing a multifaceted, improper, and unconscionable scheme to deny and reduce the payment of MedPay benefits. In furtherance of its scheme to deny and reduce the payment of MedPay benefits, USAA-Association contracted with AIS, a third-party, to reduce and deny reimbursement of USAA insureds' MedPay benefits using its MBA process. The MBA process is designed to categorically eliminate or reduce the amount USAA pays for their insureds' health care expenses based upon various codes, including PPO codes, DOC codes, PR codes, GR codes and RF codes.

170.    The conspiracy was fully formed and involved USAA-Association, USAA-CIC, USAA-GIC, Garrison, and AIS. Each Defendant and AIS individually were part of the conspiracy and all Defendants and AIS agreed as to the purpose of the conspiracy, which was to implement a multifaceted, improper, and unconscionable scheme to deny and reduce the payment of MedPay benefits. The improper reductions and denials USAA insureds' MedPay benefits in furtherance of this conspiracy were done pursuant to the contract between USAA-Association and AIS, which sets forth how AIS reduces and denies these benefits.

171.    Each Defendant was aware of the other Defendants' roles in the conspiracy.

172.    Each Defendant agreed among themselves and intended that the fraud by deceit was perpetrated on Plaintiff and USAA insureds who comprise the putative class members.

173.    Each Defendant had contracts and/or on-going cooperative relationships with at least one of the other co-conspirators responsible for the harm suffered by Plaintiffs and putative class members.

174.    Significant wrongful conduct was committed in furtherance of the conspiracy, including the making of material fraudulent misrepresentations, and omitting material information that induced Plaintiffs to pay insurance premiums for MedPay policies, namely concealing its multifaceted scheme designed and implemented to avoid paying its insureds' MedPay benefits in accordance with USAA's representations made in its MedPay policies.

175.    Each Defendant committed at least one overt act in furtherance of the conspiracy. These acts in furtherance of the conspiracy included, among others:

a.      Defendant USAA-Association, on behalf of itself and its subsidiaries USAA-CIC, USAA-GIC and Garrison, made an overt act in furtherance of the conspiracy by contracting with AIS on behalf of itself and all other Defendants for the express purpose of exercising the conspiracy.

b.      Defendants also made substantial overt acts in furtherance of the conspiracy by using, as more fully detailed in the general allegations supra, AIS's MBA System to arbitrarily and unlawfully reduce and deny Defendants' insureds' Medpay claims using, inter alia, the following codes:

i.      Defendants reduced MedPay claim payments based on EORs, sent by AIS to insureds, containing PPO codes stating that "[t]his service provider participates in a PPO network and has agreed to accept as payment in full the reimbursement amount listed in this line for the service listed, and also has agreed not to seek any additional payment from the patient," while at the same time, USAA had not entered into direct PPO agreements with providers;

ii.      Defendants denied MedPay claim payments based on PR codes contained in EORs, sent by AIS to insureds, attaching a letter written by a physician (i) engaged by AIS; (ii) who conducts only a paper review; (iii) who does not physically examine the patient or speak with the patient; and (iv) who has never spoken with the insureds' provider regarding the reasonableness or necessity for the medical service, stating that the submitted documentation does not substantiate that the treatment provided is medically necessary and/or related to the loss, and without any independent investigation by USAA.

iii.      Defendants reduced full payment of MedPay claims in EORs, sent by AIS to insureds, containing RF codes which arbitrarily reduce provider charges using a database containing unrelated Medicare charges associated with CPTs; and

iv.      Defendants denied full payment of MedPay claims in EORs, sent by AIS to insureds, containing DOC codes which request unnecessary provider documents relating to treatment.

v.      Defendants improperly denied full payment of MedPay claims based

CLASS ACTION COMPLAINT

on GR codes whereby USAA directs AIS to program its computer to deny payment of medical bills covered under MedPay claims based on automatic bill processing through its computer based on relation to a motor vehicle collision, without USAA conducting any independent investigation, but instead relying only on AIS's arbitrary automated MBA process

176.    As a direct and proximate result of USAA's and AIS's conspiracy and the USAA and AIS acts in furtherance of the conspiracy, as detailed *supra*, Plaintiffs and the putative class members have suffered damages.

## SIXTH CLAIM FOR RELIEF
### Civil Conspiracy to Violate the UCL
### Against All Defendants
### (On Behalf of All Plaintiffs and the Class)

177.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

178.    Defendants engaged in a conspiracy to violate the Unfair Competition Law, as alleged in Court 3 *supra*, by implementing a multifaceted, improper, and unconscionable scheme to deny and reduce the payment of MedPay benefits. In furtherance of their scheme to deny and reduce the payment of MedPay benefits, USAA-Association contracted with AIS, a third-party, to reduce and deny reimbursement of USAA insureds' MedPay benefits using its MBA process. The MBA process is designed to categorically eliminate or reduce the amount USAA pay for their insureds' health care expenses based upon various codes, including PPO codes, DOC codes, PR codes, GR codes and RF codes.

179.    The conspiracy was fully formed and involved USAA-Association, USAA-CIC, USAA-GIC, Garrison, and AIS. Each Defendant individually were part of the conspiracy and all Defendants agreed as to the purpose of the conspiracy, which was to implement a multifaceted, improper, and unconscionable scheme to deny and reduce the payment of MedPay benefits. The improper reductions and denials USAA insureds' MedPay benefits in furtherance of this conspiracy were done pursuant to the contract between USAA-Association and AIS, which sets forth how AIS reduces and denies these benefits.

1        180.    Each Defendant was aware of the other Defendants' roles in the conspiracy.

2        181.    Each Defendant agreed among themselves and intended that the violation of the Unfair

3    Competition Law was perpetrated on Plaintiff and USAA insureds who comprise the putative class

4    members.

5        182.    Each Defendant had contracts and/or on-going cooperative relationships with at least

6    one of the other co-conspirators responsible for the harm suffered by Plaintiffs and putative class

7    members.

8        183.    Significant wrongful conduct was committed in furtherance of the conspiracy,

9    including the making of material fraudulent misrepresentations, and omitting material information

10   that induced Plaintiffs to pay insurance premiums for MedPay policies, namely concealing its

11   multifaceted scheme designed and implemented to avoid paying its insureds' MedPay benefits in

12   accordance with USAA's representations made in its MedPay policies.

13       184.    Each Defendant committed at least one overt act in furtherance of the conspiracy.

14   These acts in furtherance of the conspiracy included, among others:

15            a.      Defendant USAA-Association, on behalf of itself and its subsidiaries USAA-

16   CIC, USAA-GIC and Garrison, made an overt act in furtherance of the conspiracy by contracting

17   with AIS on behalf of itself and all other USAA entities for the express purpose of exercising the

18   conspiracy.

19            b.      Defendants also made substantial overt acts in furtherance of the conspiracy

20   by using, as more fully detailed in the general allegations *supra*, AIS's MBA System to arbitrarily

21   and unlawfully reduce and deny Defendants' insureds' Medpay claims using, *inter alia*, the following

22   codes:

23                 i.      Defendants reduced MedPay claim payments based on EORs, sent by

24   AIS to insureds, containing PPO codes stating that "[t]his service provider participates in a PPO

25   network and has agreed to accept as payment in full the reimbursement amount listed in this line for

26   the service listed, and also has agreed not to seek any additional payment from the patient," while at

27   the same time, USAA had not entered into direct PPO agreements with providers;

ii.    Defendants denied MedPay claim payments based on PR codes contained in EORs, sent by AIS to insureds, attaching a letter written by a physician (i) engaged by AIS; (ii) who conducts only a paper review; (iii) who does not physically examine the patient or speak with the patient; and (iv) who has never spoken with the insureds' provider regarding the reasonableness or necessity for the medical service, stating that the submitted documentation does not substantiate that the treatment provided is medically necessary and/or related to the loss, and without any independent investigation by USAA.

iii.    Defendants reduced full payment of MedPay claims in EORs, sent by AIS to insureds, containing RF codes which arbitrarily reduce provider charges using a database containing unrelated Medicare charges associated with CPTs; and

iv.    Defendants denied full payment of MedPay claims in EORs, sent by AIS to insureds, containing DOC codes which request unnecessary provider documents relating to treatment.

v.    Defendants improperly denied full payment of MedPay claims based on GR codes whereby USAA directs AIS to program its computer to deny payment of medical bills covered under MedPay claims based on automatic bill processing through its computer based on relation to a motor vehicle collision, without USAA conducting any independent investigation, but instead relying only on AIS's arbitrary automated MBA process

185.    As a direct and proximate result of Defendants' conspiracy to violate of § 17200, Plaintiffs and Class members have been injured in fact and suffered lost money or property in that USAA failed to provide benefits owed to their insureds under the insurance policies USAA issued.

186.    To date, Defendants continues to conspire to violate the Unfair Competition law by breaching its insurance contracts.

187.    Plaintiffs and Class members are realistically threatened by Defendants future repetition of their conspiracy to violate California Insurance Code § 790.03(h) and California Insurance Code § 781.

188.    Pursuant to § 17203 of the Unfair Competition Law, Plaintiffs and Class members, are

1    seeking an order enjoining USAA from using AIS and its MBA system to deny or reduce benefits

2    owed to USAA insureds. Without such an order, there is a continuing threat to Plaintiffs and the Class

3    members, as well as to members of the general public, that USAA and AIS will continue their

4    conspiracy to deny and reduce benefits to California consumers.

**SEVENTH CLAIM FOR RELIEF**
**Civil Conspiracy to Violate Insurance Code § 781**
**Against All Defendants**
**(On Behalf of All Plaintiffs and the Class)**

8    189.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every

9    allegation contained above as though the same were fully set forth herein.

10    190.    Defendants engaged in a conspiracy violate Insurance Code § 781, as alleged in Court

11    5 *supra*, by implementing a multifaceted, improper, and unconscionable scheme to deny and reduce

12    the payment of MedPay benefits. In furtherance of their scheme to deny and reduce the payment of

13    MedPay benefits, USAA-Association contracted with AIS, a third-party, to reduce and deny

14    reimbursement of USAA insureds' MedPay benefits using its MBA process. The MBA process is

15    designed to categorically eliminate or reduce the amount USAA pay for their insureds' health care

16    expenses based upon various codes, including PPO codes, DOC codes, PR codes, GR Codes and RF

17    codes.

18    191.    The conspiracy was fully formed and involved USAA-Association, USAA-CIC,

19    USAA-GIC, Garrison, and AIS. Each Defendant individually were part of the conspiracy and all

20    Defendants and AIS agreed as to the purpose of the conspiracy, which was to implement a

21    multifaceted, improper, and unconscionable scheme to deny and reduce the payment of MedPay

22    benefits. The improper reductions and denials USAA insureds' MedPay benefits in furtherance of

23    this conspiracy were done pursuant to the contract between USAA-Association and AIS, which sets

24    forth how AIS reduces and denies these benefits.

25    192.    Each Defendant was aware of the other Defendants' roles in the conspiracy.

26    193.    Each Defendant agreed among themselves and intended that the violation of Insurance

27    Code § 781 was perpetrated on Plaintiff and USAA insureds who comprise the putative class

1  members.

2      194.    Each Defendant had contracts and/or on-going cooperative relationships with at least

3  one of the other co-conspirators responsible for the harm suffered by Plaintiffs and putative class

4  members.

5      195.    Significant wrongful conduct was committed in furtherance of the conspiracy,

6  including the making of material fraudulent misrepresentations, and omitting material information

7  that induced Plaintiffs to pay insurance premiums for MedPay policies, namely concealing its

8  multifaceted scheme designed and implemented to avoid paying its insureds' MedPay benefits in

9  accordance with USAA's representations made in its MedPay policies.

10     196.    Each Defendant committed at least one overt act in furtherance of the conspiracy.

11  These acts in furtherance of the conspiracy included, among others:

12         a.    Defendant USAA-Association, on behalf of itself and its subsidiaries USAA-

13  CIC, USAA-GIC and Garrison, made an overt act in furtherance of the conspiracy by contracting

14  with AIS on behalf of itself and all other USAA entities for the express purpose of exercising the

15  conspiracy.

16         b.    Defendants also made substantial overt acts in furtherance of the conspiracy

17  by using, as more fully detailed in the general allegations *supra*, AIS's MBA System to arbitrarily

18  and unlawfully reduce and deny Defendants' insureds' Medpay claims using, *inter alia*, the following

19  codes:

20             i.    Defendants reduced MedPay claim payments based on EORs, sent by

21  AIS to insureds, containing PPO codes stating that "[t]his service provider participates in a PPO

22  network and has agreed to accept as payment in full the reimbursement amount listed in this line for

23  the service listed, and also has agreed not to seek any additional payment from the patient," while at

24  the same time, USAA had not entered into direct PPO agreements with providers;

25             ii.    Defendants denied MedPay claim payments based on PR codes

26  contained in EORs, sent by AIS to insureds, attaching a letter written by a physician (i) engaged by

27  AIS; (ii) who conducts only a paper review; (iii) who does not physically examine the patient or speak

CLASS ACTION COMPLAINT

1    with the patient; and (iv) who has never spoken with the insureds' provider regarding the

2    reasonableness or necessity for the medical service, stating that the submitted documentation does

3    not substantiate that the treatment provided is medically necessary and/or related to the loss, and

4    without any independent investigation by USAA.

5            iii.    Defendants reduced full payment of MedPay claims in EORs, sent by

6    AIS to insureds, containing RF codes which arbitrarily reduce provider charges using a database

7    containing unrelated Medicare charges associated with CPTs;

8            iv.    Defendants denied full payment of MedPay claims in EORs, sent by

9    AIS to insureds, containing DOC codes which request unnecessary provider documents relating to

10   treatment; and

11           v.    Defendants improperly denied full payment of MedPay claims based

12   on GR codes whereby USAA directs AIS to program its computer to deny payment of medical bills

13   covered under MedPay claims based on automatic bill processing through its computer based on

14   relation to a motor vehicle collision, without USAA conducting any independent investigation, but

15   instead relying only on AIS's arbitrary automated MBA process.

16           197.    Defendants conspired to violate California Insurance Code § 781(a) by failing to

17   disclose to USAA insureds that Defendants had implemented a multifaceted, improper, and

18   unconscionable scheme to deny and reduce the payment of MedPay benefits which USAA failed to

19   disclose to its insureds in its policies and when communicating to its insureds regarding the reduction

20   and denial of benefits, and which AIS failed to disclose to USAA insureds when communicating with

21   them regarding the reduction and denial of benefits, including in the EORs AIS sent to them.

22           198.    Specifically, in its MedPay policies, USAA represented that it would pay its California

23   insureds' covered MedPay benefits as follows:

24           a. "[t]he amount provided by an applicable agreement with a Preferred Provider

25   Organization, Preferred Provider Network, or other similar agreement";

26           b. "[t]he amount required, approved, or allowed by a fee schedule established by a

27   state, federal, or other governmental entity in the relevant geographic area";

CLASS ACTION COMPLAINT

1          c. "[t]he amount negotiated with the provider; or"

2          d. the lesser of "[t]he actual amount billed" or "[a] reasonable fee for the service

3 provided."

4        199.    Plaintiffs and the putative class were induced to purchase MedPay policies on the basis

5 that MedPay benefits would be paid as represented in the MedPay policies.

6        200.    USAA misrepresented that it would reimburse MedPay claims under the MedPay

7 policies, and intentionally concealed and omitted material information regarding the payments it

8 would make under its insureds' MedPay policies. The foregoing multifaceted scheme, which USAA

9 failed to disclose to its insureds at the time they entered into the MedPay policies, and which was

10 reliant on AIS's MBA system, is directly contrary to USAA's representations in the MedPay policies

11 regarding the payment of provider fees in connection with USAA's insureds' MedPay claims.

12       201.    USAA had a duty to disclose its multifaceted, improper, and unconscionable scheme

13 to deny and reduce the payment of MedPay benefits because USAA affirmatively represented to its

14 insureds in its MedPay policies that it would pay provider fees in accordance with the MedPay

15 policies.

16       202.    Had Plaintiffs and the putative class been aware of Defendants multifaceted scheme

17 to deny or reduce their MedPay benefits, they would not have paid premiums to USAA to obtain the

18 MedPay policies from USAA.

19       203.    Defendants conspired to violate California Insurance Code § 781 because they knew

20 or should have known that the statements regarding reimbursement in USAA's MedPay policies, and

21 the statements made by AIS in the EORs, were false in light of Defendants multifaceted, improper,

22 and unconscionable scheme to deny and reduce the payment of MedPay benefits.

23       204.    Plaintiffs and the putative class suffered injury as a direct result of Defendants'

24 conspiracy to violate California Insurance Code § 781. Specifically, Plaintiffs and the putative class

25 had their MedPay benefits improperly reduced or denied by USAA's multifaceted scheme. Moreover,

26 Plaintiffs and the putative class paid insurance premiums for MedPay policies that did not, as a result

27 of Defendants' multifaceted scheme, reimburse the claims as promised under the MedPay policies.

**EIGHTH CLAIM FOR RELIEF**
**Declaratory Relief**
**(On Behalf of All Plaintiffs and the Class)**

205.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

206.    There exists a present controversy between the parties as to whether USAA's use of AIS's MBA process using RF codes, PPO codes, DOC codes, GR codes, and sham medical reviews to deny and reduce benefits owed to USAA's insureds violates California's insurance law, including statutory and regulatory requirements regarding insurance claims handling pursuant to California Insurance Code § 790.03(h) and Cal. Code Regs. tit. 10, § 2695.7.

207.    Plaintiffs and the members of the Class contend that USAA's use of AIS and its MBA process to wrongfully and arbitrarily deny or reduce USAA's insureds' MedPay claims violates California insurance law, including  California Insurance Code § 790.03(h) and Cal. Code Regs. tit. 10, § 2695.7.

208.    Accordingly, Plaintiffs and the members of the Class request the Court to issue an order declaring that USAA's use of AIS and its MBA process to wrongfully and arbitrarily deny or reduce USAA's insureds' MedPay claims using RF codes, PPO codes, DOC codes, GR codes and medical reviews violates California insurance law, including California Insurance Code § 790.03(h) and Cal. Code Regs. tit. 10, § 2695.7.

**VI.    REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter an order granting the following relief against Defendants:

a.    An order certifying this action as a class action under Federal Rule of Civil Procedure 23, defining the Class requested herein, appointing the undersigned as Class Counsel, and finding that Plaintiffs are proper representatives of the Class requested herein;

b.    Appropriate declaratory and injunctive relief enjoining USAA from continuing its improper and unlawful claims handling practices as set forth herein;

c.    An order requiring Defendant to pay all costs associated with class notice and

CLASS ACTION COMPLAINT

1    administration of class-wide relief;

2    d.    An award to Plaintiffs and all members of the Class of compensatory, consequential,

3    incidental, nominal, actual, statutory, and exemplary/punitive damages, in an amount

4    to be determined at trial;

5    e.    An award of attorneys' fees, costs, and expenses, as provided by law or equity;

6    f.    An award for equitable relief requiring restitution and disgorgement of the revenues

7    wrongfully retained as a result of Defendants' wrongful conduct;

8    g.    An order requiring Defendants to pay pre-judgment and post-judgment interest, as

9    provided by law or equity; and

10    h.    Such other and further relief as the Court may deem just and proper.

11    DATED: June 5, 2024                    */s/ Daniel S. Robinson*
Daniel S. Robinson
12    Michael W. Olson
**ROBINSON CALCAGNIE, INC.**
13    19 Corporate Plaza Drive
Newport Beach, CA 9660
14    (949) 720-1288; Fax: (949) 720-1292
drobinson@robinsonfirm.com
15    moloson@robinsonfirm.com

16    Stephen G. Larson
Catherine S. Owens
17    **LARSON LLP**
555 South Flower Street, 30th Floor
18    Los Angeles, CA 90071
(2130 436-4864; Fax: (213) 623-2000
19    slarson@larsonllp.com

20    Ted B. Wacker
**LAW OFFICES OF TED B. WACKER**
21    1000 Newport Center Drive
Newport Beach, CA 92660
22    (949) 706-7100; Fax: (949) 209-2558
twacker@tbwlawfirm.com
23
*Attorneys for Plaintiffs and the Proposed Class*
24

25

26

27

**CLASS ACTION COMPLAINT**

1

**JURY DEMAND**

2          Plaintiffs Neville Abraham, III and Parry Abraham demand a trial by jury on all claims in this

3    Complaint so triable.

4    DATED: June 5, 2024                    */s/ Daniel S. Robinson*

5                                          Daniel S. Robinson
                                           Michael W. Olson
6                                          **ROBINSON CALCAGNIE, INC.**
                                           19 Corporate Plaza Drive
7                                          Newport Beach, CA 9660
                                           (949) 720-1288; Fax: (949) 720-1292
8                                          drobinson@robinsonfirm.com
                                           moloson@robinsonfirm.com

9
                                           Stephen G. Larson
10                                         Catherine S. Owens
                                           **LARSON LLP**
11                                         555 South Flower Street, 30th Floor
                                           Los Angeles, CA 90071
12                                         (2130 436-4864; Fax: (213) 623-2000
                                           slarson@larsonllp.com
13
                                           Ted B. Wacker
14                                         **LAW OFFICES OF TED B. WACKER**
                                           1000 Newport Center Drive
15                                         Newport Beach, CA 92660
                                           (949) 706-7100; Fax: (949) 209-2558
16                                         twacker@tbwlawfirm.com

17                                         *Attorneys for Plaintiffs and the Proposed Class*

18

19

20

21

22

23

24

25

26

27

CLASS ACTION COMPLAINT